IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 3, 2018 Session

## NATHANIEL WALKER v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
No. C-16-159          Kyle Atkins, Judge

_____

### No. W2017-00923-CCA-R3-PC

_____

The Petitioner, Nathaniel Walker, appeals the denial of his petition for post-conviction relief, arguing that his trial counsel provided ineffective assistance of counsel and that his guilty pleas were unknowingly and involuntarily entered. Following our review, we affirm the summary denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

J. Noble Grant, II, Jackson, Tennessee, for the appellant, Nathaniel Walker.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Jody S. Pickens, District Attorney General; and Ben Mayo, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

On June 23, 2015, the Petitioner pled guilty to aggravated assault, aggravated burglary, and employing a firearm during the commission of a felony in exchange for concurrent, three-year sentences for the aggravated assault and aggravated burglary convictions and a six-year sentence for employing a firearm during the commission of a felony to run consecutively to the three-year sentences and concurrent to a previously-imposed three-year sentence. The Petitioner filed his initial pro se petition for post-

conviction relief on June 21, 2016. Counsel was appointed and filed an amended petition for post-conviction relief on October 20, 2016.

At the February 16, 2017 evidentiary hearing, the Petitioner testified regarding a number of ways in which he believed trial counsel was deficient. These included counsel's refusal to file a motion to sever his case from his co-defendants; her failure to properly advise him about the mandatory nature of his sentence; and her failure to share with him photographs of the victim's head. The Petitioner also claimed that counsel never explained how he could be convicted for possession of a gun if he did not handle the gun or why his jail credits only counted toward three of the charges. In addition, counsel led him to believe he would receive parole after serving thirty percent of his sentence, but he did not. The Petitioner initially said that trial counsel did not discuss the likelihood of his receiving a maximum sentence and advised him not to go to trial, but later he acknowledged that he was advised that if he went to trial he could receive eighteen years or more and that six years was the mandatory minimum for the firearm charge. The Petitioner acknowledged that he told the trial court that trial counsel was excellent at the plea agreement hearing, but at the post-conviction hearing, the Petitioner recanted, testifying that trial counsel was excellent on another prior case in which she represented him, but did not put forth much effort in this case and told him that he was "guilty because it was a juvenile" who was injured during the commission of the offenses.

Regarding his request for a motion for severance, the Petitioner testified that he would not have taken the plea if he had a court date separate from the other co-defendants. The Petitioner testified that he believed that because his co-defendant and cousin, Darron Thompson, admitted to his charge, the Petitioner had to take a plea because, otherwise, he would be going to trial with Mr. Thompson and he did not want to "mess up [his] cousin."

On cross-examination, the Petitioner was asked whether trial counsel promised him that he would receive parole, to which the Petitioner answered that trial counsel promised him that "[i]f it's at thirty percent they'll get you parole." However, at his plea hearing, the Petitioner answered in the affirmative when asked whether he understood the court's instruction at his plea hearing that there was nothing certain regarding his release eligibility date for parole.

Trial counsel testified that she had been practicing law since 2011, with approximately fifty percent of her current practice being criminal defense, ranging from simple possession cases all the way up to murder cases. She also said she had previously handled several cases involving charges of employing a firearm during the commission of a dangerous felony. Trial counsel testified that she and the Petitioner met twice in jail

and once in court. During their first meeting, which lasted at least an hour, she and the Petitioner, among other things, reviewed discovery and discussed the facts of the case. During their second meeting, which lasted approximately thirty to forty-five minutes, she and the Petitioner discussed the plea offer of twelve years. During their final, in-court meeting, she and the Petitioner discussed the new plea offer of six years, which the District Attorney had just made that day.

Trial counsel testified that the Petitioner denied possessing the firearm and that there was no gun residue evidence linking him to it. She explained to him, however, that his co-defendant's statements implicated him, and there were no witnesses who could corroborate his version of events. According to trial counsel, one of the co-defendants, Darren Thompson, wanted to take sole responsibility for the firearm charge, but trial counsel explained to the Petitioner that it was not possible for Mr. Thompson to do that. Trial counsel stated that the minor victim testified that the Petitioner had the gun at one point, and that the Petitioner also admitted to counsel that he had possession of the gun at one point, although he claimed that he did not "wave it at anybody or point it at anybody."

Trial counsel testified that she discussed defense strategies with the Petitioner, but explained to him that they really did not have anything "to present as evidence to show that he was not guilty of anything" aside from Mr. Thompson "saying that nobody else had anything to do with it," and their defense would rely on the jury disbelieving the minor victim. Trial counsel testified that she explained the theory of criminal responsibility to the Petitioner "[a]d nauseum," repeatedly explaining that he could be found guilty for employment of a firearm during a dangerous felony due to his own actions or by being criminally responsible for the conduct of another.

Trial counsel said that she "explained to [the Petitioner] what he was charged with, what each count carried, the maximum - - the minimum, the maximum, the mandatory as far as the gun charge is concerned" and that if he went to trial he could receive a sentence of up to twenty-one years. She said that she did not go into detail about the sentencing because he never expressed a desire to go to trial.

Regarding the motion for severance, trial counsel testified that she had filed motions for severance in cases with multiple defendants before but did not file one in this case because "there was no indication that [they] were going to trial." The Petitioner did not demand that she file a motion for severance and she did not refuse to file one. However, there was "no point in filing a motion to sever because the statements would never come out if they're going to enter a plea agreement." When asked about the Petitioner's question at the post-conviction hearing about how he could be charged with a crime if another person accepted responsibility for it, trial counsel said she understood his

question to mean that the Petitioner did not "like the fact that . . . he could be charged and convicted of something that he felt that someone else was going to take the charges for." She did not interpret this to mean that the Petitioner did not understand his guilty pleas.

Trial counsel testified that she explained parole release eligibility to the Petitioner and that there was no guarantee that he would receive parole when he became eligible. On rebuttal, she was adamant that she did not "make a promise to [the Petitioner] to induce him to take the plea that he would absolutely, positively be paroled on the three-year sentence" because that would have constituted malpractice.

At the conclusion of the hearing, the post-conviction court made oral findings of fact and conclusions of law. Among other things, the court specifically accredited the testimony of trial counsel over that of the Petitioner, finding that the Petitioner's claim that trial counsel promised that he would "absolutely, one hundred percent, get out after thirty percent on that first charge," was belied by the Petitioner's own testimony at the guilty plea hearing, at which the Petitioner assured the court that he understood there was no guarantee that he would be paroled after serving only thirty percent of his sentence. The Petitioner also assured the court that he understood he still had a six-year sentence to be served consecutively. The court noted that the plea hearing was "very lengthy" and involved a "break during the middle of the plea" in which the Petitioner and trial counsel "went back into the holding cell to discuss some of these facts." The court further noted that the trial court specifically asked the Petitioner at the plea hearing whether he understood that he would receive "credit for time served only on this docket" and not from the previous case and that the Petitioner responded that he understood.

The post-conviction court concluded that the Petitioner's allegations that trial counsel did not properly investigate the pictures of the bruising were meritless, because "those were things [trial counsel] would have had time to do had [the Petitioner] not chosen to enter into the plea." Further, the court specifically found that the Petitioner failed to "present any proof to substantiate that [the victim] didn't have any bruises, that [the Petitioner] never possessed the gun, that [the Petitioner] would have had a different outcome but for these alleged deficiencies of [trial counsel]." "He hasn't put on any proof to that effect other than his conclusory statements, much less gotten to the level of clear and convincing evidence." In sum, the post-conviction court concluded that the Petitioner failed to meet his burden of showing either a deficiency in counsel's representation or any prejudice to his case. The court further concluded that the Petitioner also failed to establish that his guilty pleas were unknowing or involuntary.

The trial court denied the petition and entered a written order to that effect on April 12, 2017. A timely notice of appeal was filed on April 26, 2017.

- 4 -

## ANALYSIS

The Petitioner argues on appeal that trial counsel was ineffective because she failed to properly investigate the firearms charge, erroneously advised him that the jury was likely to believe the victim's testimony that the Petitioner had possession of the gun at one point, and failed to properly explain the parole process or the nature or consequences of the plea agreement. As a corollary to the issue, the Petitioner asserts that his guilty plea was unknowingly and involuntarily entered due to coercion by trial counsel. The State responds that the post-conviction court properly denied the petition on the basis that the Petitioner failed to meet his burden of demonstrating that he was denied the effective assistance of counsel or that his pleas were unknowing and involuntary. We agree with the State.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40–30–103 (2012). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a post-conviction court's application of the law to the facts of the case is de novo, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn.1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth

Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

Before a guilty plea may be accepted, there must be an affirmative showing in the trial court that it was voluntarily and knowingly entered. Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977). This requires a showing that the defendant was made aware of the significant consequences of the plea. State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999) (citing Mackey, 533 S.W.2d at 340). A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with

- 6 -

criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

The record fully supports the post-conviction court's findings that the Petitioner received effective assistance of counsel and entered his guilty pleas knowingly and voluntarily. The transcript of the guilty plea hearing reveals that the Petitioner was fully informed of his constitutional rights, including those that he was waiving by pleading guilty, the offenses with which he was charged, and the possible punishments he faced if convicted at trial. The Petitioner had the opportunity to go over the plea agreement with trial counsel and to ask questions during the "lengthy" plea hearing and the break during the hearing. Further, trial counsel explained the terms of the plea agreement and the rights the Petitioner was giving up by entering into a plea and his chances if he went to trial given the lack of witness statements corroborating the Petitioner's version of events and the victim's testimony that the Petitioner handled the gun. While trial counsel told the Petitioner that she was willing to go to trial, she also explained to the Petitioner that he could be found guilty of the firearm charge through the theory of criminal responsibility. The Petitioner agreed that he had been given an opportunity to speak with trial counsel about the strengths and weaknesses of his case and the pros and cons of trial versus plea agreement and that he was satisfied with her representation, even saying that she was "excellent." Moreover, the post-conviction court did not find the Petitioner to be credible in his allegations that he did not understand the plea when entering into it. The evidence reveals that the Petitioner was familiar with criminal proceedings and had entered a guilty plea in a prior case; was represented and advised by competent, experienced counsel; and received a more favorable sentence by pleading guilty than he might have received had he gone to trial and been convicted of the sentences. We conclude, therefore, that the evidence does not preponderate against the post-conviction court's findings that the Petitioner received effective assistance of counsel and that his guilty pleas were knowingly, voluntarily, and intelligently entered.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the post-conviction court denying the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE